UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| APGI-International, Inc.,<br><br>        Plaintiff,<br><br>   v.<br><br>MERO-TSK, INC. GmBH & Co. KG,<br><br>        Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 08-cv-6028-JEI-KMW<br><br>**OPINION** |

**APPEARANCES:**

HOWLAND, HESS, GUINAN, TORPEY & CASSIDY, LLP
By: Christina M. Keating, Esq.
2444 Huntingdon Pike
Huntingdon Valley, PA 19006
      Counsel for Plaintiff

SMITH, GAMBRELL & RUSSELL, LLP
By:  Mark D. Wessel
     J. Joseph Bainton
250 Park Avenue, Suite 1900
New York, NY 10177
      Counsel for Defendant

**IRENAS**, Senior District Judge:

    This case arises out of an alleged oral agreement between Plaintiff APGI-International, Inc. ("APGI") and Defendant MERO-

1

TSK, Inc. GmbH & Co. KG ("Mero").  Currently before the Court is Defendant's motion to dismiss.  It contends first, that the suit is inactive in violation of Local Civil Rule 41.1, and second, that the Court lacks personal jurisdiction over Mero.  For the reasons described herein, Defendant's motion will be denied.  The Court finds that APGI timely filed affidavits to show that good cause existed not to dismiss the action as an inactive case.  In addition, Mero, by sending communications to APGI's New Jersey office to negotiate a contract that would be partially executed in New Jersey, exhibited the "minimum contacts" necessary to submit itself to this Court's personal jurisdiction.

**I.**

In September 2005, Defendant contracted with the Huron Glass Company to supply and install glass curtain wall and window accessories at the Cleveland Museum of Art.[1]  Compl. ¶ 4.  On the purchase order for the project, Mero listed Plaintiff as a subcontractor.  *Id.* at Ex. A.  Mero and APGI subsequently signed a "Minutes of Meeting" document that outlined a number of specific terms for completing design and construction work on the

---

[1] The parties dispute certain facts underlying Plaintiff's claim.  However, on a defendant's motion to dismiss for lack of personal jurisdiction, the Court will view the factual allegations in the light most favorable to the plaintiff. *Dayhoff Inc. V. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

2

project.  *Id.* at Ex. B.  APGI describes this arrangement as a "joint venture."  Pl.'s Mem. in Opp'n to Def.'s Mot. 1.  The meeting took place at Mero's offices in Würzburg, Germany on October 18, 2005.  *Id* at 3*.*

It then appears, for reasons unspecified by the parties, that the joint venture was abandoned.  *See id.* at 3.  Thereafter, beginning in February 2006, Mero sent a number of communications to APGI referencing an "agreement" between the parties for completing the Cleveland Art Museum project.[2]  Specifically, APGI has provided copies of six facsimiles sent by Mero from its offices in Germany to APGI's office in Glassboro, New Jersey, most of which seek to negotiate terms of this agreement.  Pl.'s Mem. in Opp'n to Def.'s Mot. Ex. C.  As a result of these communications, APGI stored project materials in its New Jersey warehouse, completed design and engineering work at its New Jersey offices, and, prior to the alleged breach of contract, planned to perform specialized fabrication work in New Jersey.  *Id.* at 4.

APGI, a Delaware corporation with its principal place of business in New Jersey, filed suit on December 5, 2008, alleging breach of contract and unjust enrichment.  After filing,

---

[2] It is not clear what exactly distinguished the proposed "joint venture" from the alleged "agreement."  One difference, however, seems to be that under the joint venture, the parties would have used a joint bank account to manage project funds.  *See* Pl.'s Mem. in Opp'n to Def.'s Mot. Ex. C; Compl. Ex. B.

Plaintiff served Mero, a German corporation, by international registered mail.[3] At that point, the action lay dormant until May 2009, when the Court *sua sponte* filed notice that the case would be dismissed as inactive under Local Civil Rule 41.1. *See* D.N.J. L.Civ.R 41.1(a). Plaintiff timely responded by certifying its service of process on Mero. On August 27, 2009, APGI filed for default judgment, as Mero had yet to file an answer to the complaint. The Court denied the motion on September 30 because APGI's service by mail on Mero was improper; Germany, as a signatory to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15 1965, objects to having its nationals served with process by postal channels. Order Den. Pl.'s Mot. for Default J. ¶ 7. On December 7, 2009, the Court again filed notice that the action would be dismissed pursuant to both Local Civil Rule 41.1 as well as Federal Rule of Civil Procedure 4. APGI again timely filed an affidavit demonstrating that it had now served Mero in compliance with the Convention.

   Currently before the Court is Defendant's motion to dismiss, which presents two issues: first, whether the case must be dismissed for inactivity according to the District of New

---

[3] Because Plaintiff seeks damages in excess of $75,000, and one party is a citizen of a foreign country while the other is a citizen of New Jersey and Delaware, the case falls within the Court's diversity jurisdiction. *See* 28 U.S.C. 1332(a)(2) (2006).

Jersey's Local Civil Rules, and second, whether the Court's exercise of personal jurisdiction over Defendant is consistent with constitutional due process.

## II.

### A.

Defendant contends that this claim must be dismissed as an inactive case according to Local Civil Rule 41.1(a), which states:

> [C]ivil cases . . . which have been pending in Court for more than 120 days without any proceedings having been taken therein must be dismissed for lack of prosecution by the Court . . ., unless good cause is shown with the filing of an affidavit from counsel of record or the unrepresented party.

D.N.J. L.Civ.R 41:1(a).  Dismissal of a claim under Rule 41.1 is an extreme sanction to be used in limited circumstances. *Taylor v. New Jersey Lottery*, No. 05-5944, 2009 WL 1411492, at *3 (D.N.J. May 19, 2009).  Although the language of the Rule is phrased in mandatory terms, the Court has discretion to withdraw a call for dismissal. *Lorillard Tobacco Co. v. Asian American Market*, No. 06-948, 2007 WL 1217966, at *1 n.1 (D.N.J. Apr. 23, 2007); *see also United States v. Eleven Vehicles, Their Equipment and Accessories*, 200 F.3d 203, 215 (3d Cir. 2000) ("[A] district court can depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so

doing does not unfairly prejudice a party who has relied on the local rule to his detriment.").

**B.**

Defendant also asserts that the action must be dismissed for a lack of personal jurisdiction. This Court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the New Jersey long-arm statute. *See* Fed. R. Civ. P. 4(k)(1)(A). New Jersey's long-arm statute places no limits on the Court's personal jurisdiction other than those established by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See* N.J. Ct. R. 4:4-4; *see also DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280 (3d Cir. 1981) ("The New Jersey long-arm rule is intended to extend as far as is constitutionally permissible."). Thus, the question of whether Defendant is subject to the personal jurisdiction of the Court is one of federal constitutional law.

On a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing such jurisdiction. *Fiscus v. Combus Finance AG*, No. 03-1328, 2006 WL 1722607 at *3 (D.N.J. June 20, 2006) (citing *Mellon Bank (East) P.S.F.S. v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). But where, as here, the factual record contains only pleadings and affidavits, this burden amounts simply to establishing a prima facie case that personal jurisdiction over the defendant exists.

*Id.*

Personal jurisdiction over a non-resident defendant will generally be proper if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Such contacts may give rise either to specific or general jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009). The Court may exercise general jurisdiction over a defendant who exhibits "continuous and systematic" contacts with the forum state, regardless of whether those contacts are related to the plaintiff's cause of action. *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

Specific jurisdiction, on the other hand, exists when a defendant has no continuing presence in the forum state, but has nonetheless established contacts there, and those contacts give rise to the claim for relief before the Court. *See Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 149 (3d Cir. 1992) (citations omitted). In such cases, "[p]hysical presence within the forum state is not required to establish personal jurisdiction over a non-resident defendant." *Fiscus*, 2006 WL 1722607, at *4 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Rather, the defendant must only have "purposefully directed its activities at residents of the forum and the litigation [must have] result[ed] from alleged injuries that arise out of or relate to those activities." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (quoting *Burger King*, 471 U.S. at 472).  Such deliberate actions support the exercise of personal jurisdiction because they cause the defendant reasonably to anticipate being haled into that state's courts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Stated another way, the inquiry is whether the defendant, by some affirmative act, has "purposely avail[ed] itself of the privilege of conducting activities within the forum state." *Grand Entertainment Group, Ltc. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

 In cases involving an alleged breach of contract, the Court must examine the totality of the circumstances giving rise to the alleged agreement. *Telcordia*, 458 F.3d at 177 (citation omitted).  This involves looking to prior negotiations between the parties as well as contemplated future consequences. *Grand Entertainment Group*, 988 F.2d at 482.  On the one hand, a contract alone does not "automatically establish sufficient minimum contacts in the other party's home forum." *Id.* "[M]inimal correspondence" alone will also not satisfy minimum

8

contacts. *Carteret Sav. Bank*, 954 F.2d at 149 (citations omitted). On the other hand, "contract negotiations with forum residents can empower a court to exercise jurisdiction." *Grand Entertainment Group*, 988 F.2d at 482. It is also well established that "mail and wire communications can constitute purposeful contacts when sent into the forum." *Telcordia*, 458 F.3d at 177 (quoting *Burger King*, 471 U.S. at 476). Thus, rather than require a certain quantity of contacts with the forum state in order to exercise personal jurisdiction, the Court should instead focus on whether "the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Id.* (quotation omitted).

Finally, if the Court decides that the defendant established minimum contacts with the forum state, the burden shifts to the defendant to show that the exercise of personal jurisdiction would be unreasonable. *Carteret Sav. Bank*, 954 F.2d at 150 (citing *Burger King*, 471 U.S. at 477). This involves consideration of several factors: "the burden on the defendant; the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive policies." *Id.* In cases involving foreign

defendants, the burden of defending oneself in a foreign land "should have significant weight in assessing the reasonableness" of the Court's exercise of personal jurisdiction. *Grand Entertainment Group*, 988 F.2d at 483 (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987)).

### III.

#### A.

In the instant matter, the Court is within its discretion to avoid dismissing Plaintiff's claim as an inactive case. It also finds that Plaintiff has shown good cause why the action should proceed. Defendant contends that the case "must" be dismissed under the Court's Local Rules because a period of 120 days passed during which no action was taken on the case. Def.'s Mem. on Mot. to Dismiss 7. It is true that, after APGI filed its complaint and served it summons on Mero by mail in December 2008, the action lay idle until May 1, 2009, when the Court filed a notice of call for dismissal pursuant to Rule 41.1. But the cause of the delay does not appear to be any complacency or inattention on APGI's part; rather, Plaintiff seems merely to have been waiting for Mero to file its answer. While it is unfortunate that APGI did not, on its first attempt, properly serve its summons on Mero, the Court detects no bad faith in this failure. Thus, the Court chooses not to dismiss under Rule 41.1

on the "rationale," *Eleven Vehicles*, 200 F.3d at 215, that an honest but unsuccessful effort to serve process on a foreign defendant should not be a grounds for the "extreme sanction," *Taylor*, 2009 WL 1411492, at *3, of a Rule 41.1 dismissal.  In addition, it does not appear, and Defendant does not argue in its motion to dismiss, that Mero suffered prejudice as a result of the delay in proceeding.

   Defendant also claims that "APGI has failed to file any affidavit . . . setting forth "good cause" for the failure to timely prosecute [its] action."  Def.'s Mem. on Mot. to Dismiss 7.  The Court finds otherwise.  APGI responded to both of the Court's notices of dismissal, providing affidavits to show that it had served Mero with the complaint.  While it did not specifically couch its responses in the language of establishing good cause, it is clear that they were submitted for such purpose.  The Court finds these affidavits of service establish good cause not to dismiss Plaintiff's claim for inactivity.  Thus, Defendant's motion to dismiss the action under Local Civil Rule 41.1(a) will be denied.

**B.**

   Turning to Defendant's second claim, the Court must determine whether Mero's emails and facsimiles sent to APGI's office in Glassboro, New Jersey, combined with the work to be performed in New Jersey under the alleged agreement between the

parties, establishes the sort of minimum contacts that gives rise to personal jurisdiction in New Jersey.

Mero claims it had no contacts with New Jersey out of which APGI's claims could have arisen because "all negotiations and communications [between the parties] took place in Germany." Def.'s Mem. on Mot. to Dismiss 5.  But the record shows otherwise.  Plaintiff provided evidence showing that between February and June 2006, Mero sent at least six facsimiles and one email to APGI concerning the Cleveland Art Museum project.  The facsimiles were received in APGI's New Jersey offices.  The documents repeatedly make reference to an agreement between the parties.  They discuss important contract terms, including profit sharing, mark-up rates, warranty terms, and service fees.  Pl.'s Mem. in Opp'n to Def.'s Mot. Ex. C.

When Mero sent these fax transmissions to a New Jersey office to negotiate terms of an agreement with APGI, it was purposefully directing its business activities at a resident of the forum.  *See Burger King*, 471 U.S. at 472 (1985).  Given that the faxes discussed essential terms of the agreement, the contacts appear to have been "instrumental" in the formation of the agreement between the parties.  *See Telcordia*, 458 F.3d at 177.  Thus, when taken together, the communications are the sort of "contract negotiations with forum residents [that] can empower a court to exercise jurisdiction."  *Grand Entertainment Group*,

12

988 F.2d at 482.

In addition, the Court must consider the "contemplated future consequences" of the contract.  *Id.*  APGI claims that, pursuant to the contract, it performed design and engineering work in New Jersey, stored project materials in New Jersey, and, but for Mero's alleged breach, would have performed materials fabrication work in New Jersey.  Pl.'s Mem. in Opp'n to Def.'s Mot. Ex. 4.  Mero provided no evidence to the contrary, nor does it claim it was unaware that APGI planned to perform this work in New Jersey.  Thus, the Court can infer that Mero established a connection with New Jersey such that it should have "reasonably anticipate[d] being haled into court there."  *World-Wide Volkswagen*, 444 U.S. at 297 (citations omitted).  These circumstances support the Court's exercise of personal jurisdiction over Mero for this specific cause of action.

Further, the Court finds persuasive Plaintiff's reliance on *Kultur International Films, Ltd. v. Covent Garden Pioneer, FSP., Ltd.*, 860 F.Supp. 1055 (D.N.J. 1994).  In *Kultur*, a New Jersey corporation brought suit against an English defendant for breach of contract arising from an alleged oral agreement.  *Id.* at 1056.  The defendant was never present in New Jersey, but did place phone calls, send letters, and transmit five facsimiles to the plaintiff's offices in New Jersey concerning the alleged agreement.  *Id.* at 1059.  With the plaintiff "hang[ing] its

13

jurisdictional hat" on these contacts alone, the court found that the defendant "had just enough contact with [the plaintiff] in New Jersey to allow th[e] Court to exercise personal jurisdiction over [the defendant] on the pending claims." *Id.* at 1062.  The court relied as well on the fact that "performance . . . of the alleged contract [was] contemplated as being in New Jersey."  *Id.*  Given the close factual similarities between *Kultur* and the instant matter, the Court is persuaded that Mero established the minimum contacts necessary to give rise to personal jurisdiction in a New Jersey court.

Finally, Defendant argues, in largely conclusory terms, that the Court's assertion of jurisdiction would "not comport with 'traditional notions of fair play and substantial justice.'"  Def.'s Mem. on Mot. to Dismiss 6.  The argument is based on the assumption that Mero has "no presences [sic], contacts or transactions within the forum state."  *Id.*  Given that the Court has found that Mero has established minimum contacts New Jersey, the argument necessarily fails.  Thus, the Defendant has not met its burden of demonstrating why exercising personal jurisdiction in this case would be unreasonable.

### IV.

For the reasons stated above, the Court holds that Plaintiff demonstrated good cause to avoid a dismissal of its claim under

Local Civil Rule 41.1.  In addition, Defendant established minimum contacts with New Jersey that bring it within the specific jurisdiction of this Court.  Defendants' motion will therefore be denied.  The Court will issue an appropriate Order.

Dated: July 6, 2010

s/  Joseph  E.  Irenas

Joseph E. Irenas, S.U.S.D.J.